IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES LEE GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:14cv541-SRW |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff James Lee Griffin ("Plaintiff") brings this action pursuant to 42 U.S.C.§ 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("the Act") and supplemental security income under Title XVI of the Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145

(11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. Hillsman v. Bowen, 804 F.2d 1179 (11th Cir. 1986). Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## BACKGROUND

Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging that he became disabled on August 13, 2010. (R. 213, 215). The administrative law judge ("ALJ") held a hearing on November 20, 2012. (R. 78-98). On January 31, 2013, the ALJ ruled that Plaintiff could perform his past relevant work as a floor cleaner. (R. 72).

The ALJ followed the five step evaluation for determining disability benefits and concluded that Plaintiff had not engaged in substantial gainful activity since August 13,

2010, and that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine and depression. 20 C.F.R. § 404.1520(c), § 416.920(c)). (R. 67). He concluded at step three that none of Plaintiff's impairments or combination of impairments met or medically equaled one of the listings. (R. 69). The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of medium work,[1] although limited in his ability to maintain attention and concentration for extended periods due to his depression. (R. 69.) The ALJ found transferability of job skills was not material because Plaintiff's past relevant work is unskilled. (R. 96). At step four, the ALJ determined that Plaintiff was able to perform his past relevant work as a floor cleaner. (R. 72). Consequently, the ALJ found, Plaintiff was not disabled. (R. 72). Plaintiff then filed the present action seeking review of the Commissioner's final decision. (Doc. No. 1).

## DISCUSSION

Plaintiff raises two primary claims for reversal of the Commissioner's decision. First, he argues that the ALJ's decision that Plaintiff has the RFC to perform the full range of medium work, limited by an inability to maintain attention and concentration for extended periods due to depression, is not supported by substantial evidence. Second, he argues that the ALJ's credibility determination is not supported by substantial evidence. (Doc. No. 12, at 3-4).

### Inquiry into Plaintiff's Financial Status

---

[1]Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R.§§ 404.1567(c), 416.967(c).

In connection with Plaintiff's second argument challenging the ALJ's credibility determination[2] that Plaintiff's "allegations of disabling pain exceed objective findings of record" (R. 72), Plaintiff maintains that the ALJ incorrectly found that Plaintiff "has made no attempt to avail himself of [free or low-cost medical treatment] programs." (Doc. No. 12, at 9; R. 72). The ALJ acknowledged that Plaintiff had been diagnosed with mild degenerative disc disease, but noted that

> he is able to move about in a satisfactory manner. There is no evidence of any motor or sensory deficits. *No surgery has been recommended, and the claimant's treatment has been somewhat limited allegedly due to lack of finances. However, any individual experiencing the debilitating limitations Mr. Griffin alleges would have found some way to obtain medical treatment as there are programs which enable individuals to obtain medical treatment free or at low cost. The claimant has made no attempt to avail himself of such programs.*

(R. 72)(emphasis added). Plaintiff responds that his "only treatment has been at emergency rooms and at Mercy Medical Clinic, which is the low-cost medical treatment that is available in this county." (Doc. No. 12, at 9). Plaintiff maintains that "[t]he ALJ never asked claimant or anyone else at the hearing about the issue," and that "[t]here is absolutely no evidence at all, much less substantial evidence, that claimant had not 'availed himself of such

---

[2]See Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (discussing the three-part standard in the Eleventh Circuit for assessing pain). If the standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992)."If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Hale v. Bowen, 831 F.2d 1007 (11th Cir. 1987)). "Substantial evidence must support the ALJ's reasons for discrediting pain testimony." Douglas v. Commissioner of Social Security, 486 F. App'x 72, 75 (11th Cir. 2012) (citation omitted).

programs.'" (Doc. No. 12, at 9-10).

"When the ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, this court will remand for further consideration. However, if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists." Henry v. Comm'r of Soc. Sec., No. 15-11381, 2015 WL 5778938, at *2 (11th Cir. Oct. 5, 2015) (published) (per curiam) (citations omitted). In Henry, the claimant maintained that he was unable to pay for continued medical treatment. Id. at *2. Without developing the record or addressing the claimant's financial ability to pursue more treatment, the ALJ found that the claimant's testimony regarding his back symptoms and vision limitations was not credible because the claimant "worked after his initial injury, received 'conservative treatment,' and did not take narcotics." Id. at *2-3.  The Court of Appeals held that "[t]he ALJ had an obligation to 'scrupulously and conscientiously probe' into the reasons underlying [the claimant's] course of treatment, yet there is nothing in the record indicating the ALJ inquired into or considered [the claimant's] financial ability to seek an alternate treatment plan. Instead, the ALJ focused on the absence of aggressive treatment as a proxy for establishing disability." Id. at 3 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). The Eleventh Circuit determined that, "[a]bsent proper factual development, we cannot say there is 'such relevant evidence as a reasonable person would accept as adequate to support [the] conclusion' that [the claimant's]

testimony is not credible." Id. at *3 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation marks omitted)) (alterations added). The Court of Appeals remanded for further factual development because "the ALJ could not fairly assess the severity of [the claimant's] back pain and potential disability." Id. at *3, *5 (alterations added).

Similarly, the ALJ in Plaintiff's case knew that Plaintiff was relying on low cost medical care and financial help to obtain medication, and that Plaintiff had testified that the medication only "mildly" alleviated Plaintiff's pain. (R. 85-86). Nevertheless, the ALJ did not inquire into Plaintiff's ability to seek additional medical care[3] for his back, instead simply making the conclusory statement that someone with Plaintiff's alleged pain "would have

---

[3] Plaintiff went to the emergency room in May 2010, complaining of pain "primarily in the right lower lumbar region, sometimes radiates into his right thigh," but he denied numbness, tingling, or weakness to the extremities." (R. 70, 383). During that visit, Plaintiff stated that he had been unable to have further evaluation because he was unemployed and had no health insurance, but pain medication he previously took helped him. (R. 383). He was referred for follow up at Mercy Medical Clinic. (R. 384). He did not seek further treatment until he returned to the emergency room in September 2010, and was diagnosed with diabetes (R. 385-93). He went back in October 2010 for complaints of blurred vision and chest pain (R. 394-96). He did not return to Mercy Medical Clinic for treatment of back pain until November 2010. (R. 70, 408).

Melvin Williams, M.D., performed a consultative physical examination on March 12, 2011. (R. 440-46). He observed that Plaintiff was in no acute distress; he ambulated with a slow but normal gait, with the use of a straight cane; he sat comfortably with no abnormal movements; he had no difficulty moving from the chair to the examination table; and he had no difficulty taking off his shoes for the exam. (R. 443-44). Dr. Williams found that Plaintiff "did show tenderness to palpation over the cervical spine, but no spinal spasms. There was some mild tenderness into the rest of the spine over the spinous processes." (R. 445). He remarked that Plaintiff "is tender from his lumbar spine over the spinous processes and over the paraspinal musculature, as well as over his sacrum with a loss of lordosis in the lumbar spine." (R. 445). He found, among other things, that Plaintiff's motor strength and muscle tone was within normal limits; his straight leg raises were negative, sitting and supine; and his light touch and pinprick sensation were intact throughout lower and upper extremities. (R. 445). Dr. Williams diagnosed Plaintiff with "[l]ow back pain, chronic, with x-rays documenting mild degenerative disk disease." (R. 446).

A month later, in April 2011, Plaintiff sought treatment for his back pain at Mercy Medical Clinic and received the medication Skelaxin, which, Plaintiff told the health care provider, worked the best for him. (R. 449). He received medication refills in May 2011. (R. 449). He returned to Mercy Medical Clinic in August 2011, and again in October 2011; during the latter visit, he said "his back is feeling better. The medicine seems to help." (R. 450, 467). Plaintiff received medication refills from Mercy Medical Clinic four months later, in February 2012. (R. 467). His most recent visit to Mercy Medical Clinic before the hearing was in May 2012, at which time he was noted to have chronic low back pain. (R. 466).

found some way to obtain medical treatment as there are programs which enable individuals to obtain medical treatment at free or at low cost." (R. 72).[4]

Absent such inquiry, this case must be remanded under <u>Henry</u> for further factual development unless the ALJ adequately determined that Plaintiff was not disabled "based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability." <u>Id.</u> at *2. For the following reasons, the court concludes that there is not substantial evidence of record to support these other potential grounds for upholding the ALJ's decision.

### Vocational Expert Testimony

Plaintiff argues that the ALJ erred in relying on the vocational expert ("VE") to find that Plaintiff could perform his past relevant work as a floor cleaner, which the VE classified as medium, unskilled work. (R. 72, 96); (Doc. No. 12, at 6-8). The ALJ stated,

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform his medium past work of a floor cleaner, as actually and generally performed. The vocational expert testified that Mr. Griffin is able to return to his past relevant work given his exertional and non-exertional limitations (SSR 00-4p).

(R. 72). Plaintiff correctly points out that the ALJ made a factual error in reporting that the VE testified that Plaintiff is "able to return to his past relevant work given his *exertional and*

---

[4] The Commissioner's argument that Plaintiff admits that he received low cost treatment does not address the question of whether Plaintiff would have pursued additional treatment if he had the ability to pay for it. The implication of Plaintiff's argument is that the ALJ erroneously assumed that Plaintiff could have sought more treatment from "programs" the ALJ identified. (Doc. No. 12, at 9-10.).

non-exertional limitations" when, in fact, the ALJ asked the VE about Plaintiff's

*nonexertional* limitations only. (R. 72, 96). The ALJ asked the expert:

> Q Consider a hypothetical candidate for employment of the same age,
> education, and work experience as the claimant who has the *non-exertional*
> capabilities and limitations set out in the consultative exam from Dr. P.
> Thorton [phonetic] at 12F. Did you see that?
> A Yes, sir.
> Q Considering each and every capability and limitation, *non-exertional*,
> reflected in that consultative examination, could a hypothetical candidate for
> employment do the claimant's past work or other work?
> A He would be able to return to past work with these *non-exertional* limits.

(R. 96) (emphasis added). In addition, Plaintiff argues that Dr. P. Thornton assessed no

specific exertional or nonexertional work-related limitations,[5] which the ALJ himself

acknowledged in his decision. (R. 71) (Dr. Thornton imposed "[n]o specific work-related

limitations ... on the claimant's ability to function"). Thus, Plaintiff contends, it was

impossible to know what mental limitations the VE was addressing in the response to the

ALJ's question, and the VE's testimony is not substantial evidence to support the ALJ's

decision that Plaintiff can do his past relevant work.

    The Commissioner responds that the VE's testimony was not even required where,

as here, the ALJ concludes at step 4 that the claimant can perform past relevant work. See

---

    [5] In assessing Plaintiff's judgment, Dr. Thornton stated, "Mr. Griffin would not be able to
manage benefits, should they be awarded, because of his math and concentration problems." (R.
425). She diagnosed Plaintiff with major depressive disorder, recurrent, and estimated low
average to average range of intellectual functioning. (R. 425). Dr. Thornton did not complete a
Psychiatric Review Technique or list any specific work-related limitations in her report. (R. 425).
The state agency mental health expert who completed a Psychiatric Review Technique in March
2011 found that Plaintiff had only mild difficulties in maintaining concentration, persistence, or
pace. (R. 436).

Lucas v. Sullivan, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990) ("because the ALJ concluded that she is capable of performing her past relevant work, testimony from a vocational expert was not necessary"). However, it is clear in this case that the VE's testimony is the *only* evidence that the ALJ cited in support of his finding that the plaintiff's past relevant work did not require activities precluded by the RFC (see R. 72, Finding No. 6), and the hypothetical posed to the VE omitted Plaintiff's nonexertional impairments. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."). The ALJ's hypothetical to the VE failed to include or otherwise implicitly account for all of Plaintiff's impairments; therefore, the VE's testimony is not "substantial evidence" and cannot support the ALJ's conclusion that Plaintiff can perform his past relevant work.

The Commissioner argues that even if the ALJ erred, the error was harmless because the ALJ accounted for any limitations in concentration by restricting Plaintiff to unskilled work. The Commissioner maintains that, irrespective of the VE's testimony, substantial evidence supports the ALJ's decision that Plaintiff's RFC enables him to perform his prior job of unskilled work. (Doc. No. 13, at 6-7).

However, the court cannot discern from the ALJ's decision how the ALJ determined that the functional effect of Plaintiff's limitations permit him to perform simple, unskilled work. The ALJ's specific mental RFC determination is that Plaintiff "is limited in his ability

to maintain attention and concentration for extended periods due to his depression." (R. 69). The ALJ's finding of "limited" does not itself indicate the degree of Plaintiff's limitation, but the degree of limitation – that is, moderate – can be gleaned from the ALJ's statement at step 2 that, "[w]ith regard to concentration, persistence or pace, the claimant has *moderate* difficulties. The claimant's depression impacts his ability to maintain attention and concentration." (R. 68) (emphasis added). When the ALJ determined that Plaintiff's mental RFC was "limited" based on "new evidence"[6] that Plaintiff's "depression would impact his ability to maintain attention and concentration on an extended basis," the ALJ did not specifically identify the "new evidence" except to imply that it appeared after the DDS physicians and psychologists assessments, which occurred in early 2011. (R. 69, 71). The ALJ then determined that Plaintiff's "depression would impact his ability to maintain attention and concentration for extended periods, but he could perform simple unskilled work activity." (R. 72). The ALJ reasoned that Plaintiff

> reports no side effects from his medication. He has required no psychiatric hospitalization for his depression. Mental health treatment records demonstrate that his depression is controlled appropriately with medication. Thus, the undersigned concludes that Mr. Griffin is capable of some type of unskilled medium work activity.

---

[6]The ALJ wrote, "Disability Determination Service physicians and psychologists assessed the claimant as having no severe physical or mental impairment. However, these assessments were made without benefit of examination or review of new evidence, which cause them to be less accurate of the claimant's true ability than the entire objective findings of record. Thus, the undersigned concludes that the claimant's depression would impact his ability to maintain attention and concentration on an extended basis." (R. 71).

(R. 72). The ALJ did not identify, and the court has not located in the record, any medical evidence that Plaintiff retains the ability to do simple, unskilled work despite his moderate deficiencies in concentration and attention. (R. 72, 453, 458-59, 466, 478-82, 488-502). Without such medical evidence, the ALJ's RFC limitation to simple, unskilled work does not account for all of Plaintiff's difficulties in maintaining attention and concentration. Cf. Winschel, 631 F.3d at 1180 (noting, with approval, that "[o]ther circuits have also rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question [to the VE] to simple, routine tasks or unskilled work... . But when *medical evidence* demonstrates that a claimant can engage in [those tasks], courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.") (citations omitted) (emphasis added); Richter v. Commissioner of Soc. Sec., 379 F. App'x 959, 962 (11th Cir. 2010) ("[W]e conclude that the ALJ's failure to include all of Richter's impairments in his hypothetical question was error. This error was not harmless because the inquiry conducted by the vocational expert did not implicitly account for Richter's deficiencies in concentration, persistence, and pace. Additionally, there is no medical evidence that, despite these limitations, Richter nevertheless retained the ability to perform simple, repetitive, and routine tasks or unskilled labor."); 20 C.F.R. Pt. 404, Subpt. P, App. 1, ¶ 12.00(C)(3) ("Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks

commonly found in work settings."); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) ("RFC is an assessment of an individual's ability to do sustained work related physical and mental activities in a work setting on a regular and continuing basis."); Walker v. Astrue, 2010 WL 4226485, at *6 (M.D. Ala. Oct. 21, 2010) (rejecting the Commissioner's argument that a limitation to unskilled work accounts for a moderate limitation in concentration, persistence or pace). The holding in Winschel was in the context of a VE's testimony at step 5, but the rationale applies equally to the ALJ's RFC determination that a claimant can do past unskilled work in light of moderate deficits in concentration and attention. E.g.,Kelley v. Colvin, 2014 WL 4230038, at *6 (discussing Winschel and related cases, and concluding that "[t]he ALJ does not cite the medical evidence on which he relied in formulating the mental limitations he included in his RFC finding, and the court has found no medical opinion of record indicating that plaintiff remains able to sustain concentration, persistence, and pace sufficiently to perform 'simple 1-2 -step" work"); Trammell v. Colvin, 2013 WL 4028489, at *4 (M.D. Ala. Aug. 7, 2013) (discussing Winschel and related cases, and concluding that "[w]hile it is possible that the ALJ's RFC limitations of 'work limited to simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple, work related decisions; with few, if any, work place changes,' accounts for plaintiff's moderate difficulties in maintaining concentration, persistence, or pace—deficiencies found by the ALJ to exist—the court simply cannot determine from the ALJ's written decision how she concluded that this is so"). The ALJ's

ruling here, that Plaintiff can do simple, unskilled work despite his mental limitation of moderate inability to maintain attention and concentration, is not adequately explained or clearly supported by substantial evidence of record.

In addition, the ALJ determined that Plaintiff "is able to perform his medium past work of a floor cleaner, as actually and generally performed," but did not identify the demands and job duties of the job of floor cleaner, as actually or generally performed. (R. 72). The ALJ did not ask Plaintiff about the actual physical or mental demands of his past work at the hearing.[7] (R. 82). Plaintiff's statements in his Work History Report[8] also shed little light on whether Plaintiff is capable of performing his past work as a floor cleaner given the ALJ's finding that his "depression would impact his ability to maintain attention and concentration on an extended basis." (R. 71, 274).

It is the claimant's burden to demonstrate an inability to return to his past work. Lucas, 918 F.2d at 1571. However, the ALJ's decision in Plaintiff's case includes evidentiary gaps, is not supported by substantial evidence, and fails to provide the court with sufficient reasoning to determine that the proper legal analysis has been conducted regarding Plaintiff's

---

[7]A claimant's statements regarding past work usually are sufficient in determining the skill level, exertional demands, and nonexertional demands of the work. SSR 82-82, 1982 WL 31386, at *3 (Jan. 1, 1982); (SSR 82-61, 1982 WL 31387, at *1-2 (Jan. 1, 1982).

[8]Plaintiff's Work History Report includes contradictory answers regarding the nature of his job as a floor cleaner. Plaintiff reported that he carried 30 pounds once or twice a week, but he frequently lifted 25 pounds, and the heaviest weight he lifted was 20 pounds. (R. 274).

ability to do his past relevant work.[9] See Cornelius, 936 F.2d at 1145-46. In particular, the ALJ's failure to address or inquire sufficiently into Plaintiff's ability to obtain alternative treatment despite his financial circumstances – where the ALJ relied primarily on Plaintiff's failure to seek treatment as grounds for finding that Plaintiff's allegations of pain are not credible, without adequately determining that Plaintiff was not disabled based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability – prevented the ALJ from making the full and fair assessment of the severity of Plaintiff's pain and potential disability required by the Henry Court. See Henry, 2015 WL 5778938, at *3-5.

Because the court concludes that the ALJ's decision must be reversed for these reasons, the court does not address Plaintiff's other grounds for reversal.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is due to be REVERSED. A separate judgment will be entered.

DONE, this 22nd day of October, 2015.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[9]The court expresses no opinion regarding whether plaintiff should prevail on remand.

14